UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADA VANESSA BRADLEY,<br><br>Plaintiff,<br><br>v.<br><br>JUST GREENS, LLC d/b/a<br>AEROFARMS; DAVID ROSENBERG,<br><br>Defendant(s). | Civ. No. 19-7162 (KM) (MAH)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on the motion (DE 5) of the defendants, Just Greens, LLC d/b/a Aerofarms ("Aerofarms") and David Rosenberg, to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Ada Vanessa Bradley, who was employed at Aerofarms, asserts claims under New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"). Specifically, Bradley alleges that she was treated disparately by Aerofarms and Rosenberg because of her race and gender, culminating in her termination from the company.

For the reasons explained below, Defendants' motion to dismiss is denied.

1

## I. Background[1]

Defendant Aerofarms operates an indoor vertical agricultural business in Newark, New Jersey. (Compl. ¶6). Defendant David Rosenberg is the Chief Executive Officer and Owner of Aerofarms. Defendant Rosenberg is a white male, a fact relevant to the allegations. (Compl. ¶3). From May 2017 until June 2018, plaintiff Bradley was employed at Aerofarms. (Compl. ¶¶38–39). Bradley is an African American female. (Compl. ¶11). Bradley had significant experience in the agricultural industry before she was hired to work as a Farm Manager for Aerofarms. Although objectively qualified for the position of Farm Manager, she was required to undergo a grueling hiring process, including 23 interviews, before she was offered the job. (Compl. ¶¶14–15). Bradley claims that no other prospective employee, including her replacement, who is a white male, was subjected to such an onerous interview process. (Compl. ¶17).

Bradley alleges that while employed at Aerofarms, she was treated disparately as compared to white male employees, notwithstanding the fact that she carried out her responsibilities in an exemplary manner. (Compl. ¶¶19–20). For example, Bradley assumed the responsibilities of a Safety Manager, which is a separate, full time position at the company, in addition to her Farm Manager responsibilities. (Compl. ¶¶18–22). In carrying out the responsibilities of a Safety Manager, plaintiff improved company safety statistics, which in turn enhanced Aerofarms' business operations and profits. (Compl. ¶¶21–22). She was also responsible for strategy planning, as well as safety and regulatory compliance. (Compl. ¶22).

---

[1] For purposes of this motion, the allegations of the Complaint are accepted as true. The pleadings and motion papers will be cited as follows:

"Compl." = Complaint [DE 1-3, copy at DE 5-3]

"Motion" = Defendants' Memorandum of Law in Support of Defendant's Motion to Dismiss [DE 5-2]

"Opp." = Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint [DE 10]

"Reply" = Defendants' Reply in support of motion to dismiss [DE 11]

2

Notwithstanding her positive performance, Bradley was excluded from management level meetings concerning her job responsibilities in favor of white, male employees. (Compl. ¶23) Bradley also alleges that her recommendations or decisions were ignored by Defendants until they were co-opted by other white, male colleagues. (Compl. ¶¶ 23–25). Bradley claims that other women at Aerofarms were treated in a similar manner. (Compl. ¶26).

Additionally, Bradley alleges that she was compensated less than her white, male colleagues, due to her gender and race. Bradley contends that when white, male colleagues tried to leave the company, they were offered better terms of employment, such as salary and stock option increases, to convince them to stay. (Compl. ¶¶30–33). This contrasted with Aerofarms' treatment of women who planned to leave the company. (Compl. ¶34). Plaintiff alleges she knows of "at least six . . . female employees" who left Aerofarms and were not offered any compensation or stock option increases to convince them to stay. (Compl. ¶34). Moreover, when Bradley requested for a small salary increase for taking on additional responsibilities as Safety Manager, she was rejected and told that she had not yet "prove[n]" herself to Rosenberg. (Compl. ¶¶30–31).

Bradley asserts that on she was wrongfully terminated from Aerofarms was replaced on June 18, 2018, by a white, male candidate. (Compl. ¶39).

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible

3

on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).[2]

---

2    Such consideration is confined, however, to clear cases in which, for example, the very foundation of a claim is a statement in a document, and the document itself is submitted to the court. It is not a means of bringing a premature, quasi-summary judgment motion in advance of discovery. I have disregarded references to facts not pled, and especially exhibits attached by the defendants in an attempt to refute the factual allegations of the Complaint. (*See, e.g.*, Exs. B, C, & D to defendant's motion papers, consisting of letters, emails, and a performance review. (DE 5-3, 11-1))

4

## III. Discussion

The three counts of the complaint all arise under the New Jersey Law against Discrimination (NJLAD). This Court' subject matter jurisdiction is founded on diversity of citizenship. *See* 28 U.S.C. § 1332(a); Notice of Removal and Memorandum of Law (DE 1); Order denying motion to remand (DE 14).

### a. Count One: Disparate Treatment Under the NJLAD

Count One of the Complaint alleges that defendant Aerofarms treated Bradley in a disparate manner because of her gender and race, in violation of the NJLAD. "There is no single prima facie case that applies to all employment discrimination claims. Instead, the elements of the prima facie case vary depending upon the particular cause of action." *Kirschling v. Atl. City Bd. of Educ.*, 10 F. Supp. 3d 587, 594 (D.N.J. 2014), *aff'd*, 604 F. App'x 153 (3d Cir. 2015). The NJLAD borrows the federal Title VII standard in analyzing claims of discrimination. *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016).

The sense of Count One is that the defendants subjected the plaintiff to ongoing disparate treatment, culminating in her termination. The elements of a plaintiff's claim of disparate treatment claim on the basis of sex and race under the NJLAD are that (1) she is a member of the protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that gave rise to an inference of unlawful discrimination. *Id.* (internal citation omitted).[3] While a "complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss . . . the claim must be facially plausible and must give fair notice to the defendants of the basis for

---

[3] Count One alleges a course of disparate treatment based on race and gender under the NJLAD, and I analyze it as such. Given that the alleged disparate employment actions include discharge, the distinction between disparate treatment and discriminatory discharge may not amount to much in the end. *See* discussion of Count Two, *infra.*

5

the claim." *Huggard v. Crown Bank*, No. CIV. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb. 17, 2012).

On the first element, Bradley alleges that she is an African American woman. (Motion at 7; Compl. ¶11). As to the second element, Bradley adequately alleges that she was qualified for the position of Farm Manager, in that she had significant experience within the agricultural industry, performed her responsibilities in a manner that exceeded expectations, and took on additional responsibilities as a Safety Manager. (Compl. ¶¶13, 19, 20).[4] The third element, an "adverse employment action," is defined to include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The Complaint alleges miscellaneous "adverse employment actions" in terms of salary and working conditions. Those, however, I can set aside; it is sufficient to note Plaintiff's allegation that her employment was terminated, the quintessential adverse employment action. (Compl. ¶38).[5]

The fourth and final element requires an allegation of circumstances that give rise to an inference of unlawful discrimination. Plaintiff can demonstrate

---

[4] Defendants dispute that plaintiff was objectively qualified to work as a Farm Manager by pointing to her allegedly negative performance reviews during the course of her employment. However, in order to satisfy the "objectively qualified" prong for an employment discrimination claim, a plaintiff must merely show that she was "actually performing the job prior to termination" which the New Jersey Supreme Court recognizes is "not a heavy burden" to meet. *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 454–55, 867 A.2d 1133, 1143–44 (2005). For purposes of a motion to dismiss, the court must accept the allegations of the plaintiff's complaint as true. *See New Jersey Carpenters & the Trustees Thereof*, 760 F.3d at 302. While defendants dispute the second prong, it is adequately alleged.

[5] Again, Defendants raise a factual dispute, alleging that plaintiff was not fired, but resigned from her position as Farm Manager. They attach a letter of resignation, for which the plaintiff says she has an explanation. (Motion at 8 & Ex. C; Response at 2). At this point, I do not look beyond the allegations of the Complaint, which alleges that the plaintiff was terminated. Such evidentiary or factual issues are for summary judgment, or trial.

6

an "inference of unlawful discrimination" by putting forth evidence showing that defendants' decision to carry out the adverse employment action was motivated by her race or gender. *See Bowie v. Costco Wholesale Corp.*, No. 3:16CV5808BRMLHG, 2019 WL 3283045, at *11 (D.N.J. July 22, 2019). Although a plaintiff's "subjective belief that race played a role in an employment decision is not sufficient to establish an inference of discrimination . . . discrimination may be inferred by showing that the employer treated a similarly situated employee outside of the plaintiff's class more favorably." *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013) (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410–11 (3d Cir. 1999)).

Plaintiff alleges facts from which such an inference need not necessarily, but could, be drawn. Defendants (1) subjected her to an onerous 23-step interview process which no other individual at the company went through (Compl. ¶¶13–17); (2) excluded her from management level meetings that concerned her job responsibilities at the company in favor of white, male peers (Compl. ¶23); (3) rejected her recommendations until they were appropriated by white, male employees (Compl. ¶¶24–25); (4) compensated her less competitively than white, male employees, even though her male colleagues did not work as many hours or have as many responsibilities (Compl. ¶¶27, 32); and finally (5) terminated her in favor of a white, male replacement. (Compl. ¶¶38–39). Taking plaintiff's allegations as true, as I must, I find that she has sufficiently alleged that defendants treated male, white employees more favorably than they treated her. The Complaint gives defendants "fair notice" of Plaintiff's contentions, and meets the *Twombly/Iqbal* burden of plausibly and factually pleading the fourth element of a disparate treatment claim. *Huggard*, No. CIV. 11-6194, 2012 WL 529548, at *4.

Defendants' motion to dismiss Count One of the Complaint, which alleges disparate treatment under the NJLAD, is therefore denied.

### b. Count Two: Discrimination Under the NJLAD

Count Two of the Complaint alleges that Defendants "subjected Plaintiff to discrimination [on the] basis of her race and/or gender." (Compl. ¶ 50). It is not entirely clear how this claim of "discrimination" differs from the Count One claim of "disparate treatment." The Plaintiff, in her responding brief, addresses them together, and does not distinguish between them.

As stated above, Count One appears to be a somewhat broader claim of disparate treatment during the employment relationship, culminating in the plaintiff's discharge. Count Two appears to focus more narrowly on the Plaintiff's firing in favor of a racially Caucasian replacement, and is more akin to a claim of discriminatory discharge *per se.* The plaintiff's opposition brief cites only the legal standard for discriminatory discharge.

The Court disfavors preliminary haggling over pleadings, preferring to define and narrow the claims in the course of discovery. I will therefore treat Count Two as it was evidently intended, as a claim of discriminatory discharge under NJLAD. The elements of such a claim are as follows:

> [T]he "plaintiff must demonstrate: (1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job."

*Kirschling v. Atl. City Bd. of Educ.*, 10 F. Supp. 3d 587, 594 (D.N.J. 2014), *aff'd*, 604 F. App'x 153 (3d Cir. 2015) (citations omitted).

The discussion of Count One, *supra*, disposes of elements 1, 2, and 3.

I turn to element 4, that the employer thereafter sought similarly qualified individuals for the job from which the plaintiff was fired. On that score, the Complaint alleges as follows:

> 38. Despite her positive performance and contributions to the Defendants, when Defendants believed they had found a suitable Caucasian male replacement, Ms. Bradley was terminated.
>
> 39. Ms. Bradley was replaced on June 18, 2018 by a Caucasian male.

8

. . .

> 51. Plaintiff was terminated by Defendants due to her race and/or gender.
>
> 52. Defendants hired individuals to perform work previously performed by Plaintiff because those individuals are not members of Plaintiff's protected class.

(Cplt. ¶¶ 38, 39, 51, 52)

The Complaint, again, could be clearer. Still, I find sufficient the allegations that Plaintiff's race and gender were the *only* explanations for her termination—*i.e.*, that she was terminated *because* the employer had found a "suitable" Caucasian male replacement, and that the replacement was hired *because* he was not a member of Plaintiff's protected class.

Alleging is not proving, and the Plaintiff will have to develop and present evidence to support her contentions. Moreover, as currently pled, Count Two may well, as defendants say, turn out to be superfluous. For now, however, it is adequately pled, and the motion to dismiss it is denied.

### c. Individual Liability Under the NJLAD

Count Three of the Complaint alleges that Defendant Rosenberg aided and abetted the discriminatory conduct by Defendant Aerofarms, in violation of NJLAD. (Compl. ¶57).

NJLAD imposes liability on "employers," a defined term. *See* N.J. Stat. Ann. § 10:5–12(e). But NJLAD also makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act." N.J. Stat. Ann. § 10:5–12(e). Aiding and abetting amounts to a mechanism for imposing personal liability for a violation of the NJLAD. *See Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 947 A.2d 626, 645 (2008) ("individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can . . . arise through the 'aiding and abetting' mechanism.").

Cases interpreting the NJLAD have occasionally embraced the "awkward" theory that a supervisor can aid and abet, not only the conduct of another, but

that supervisor's own acts of discrimination. *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999) (abrogated on other grounds); *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425 (D.N.J. 2009). More common, however, is the theory that the individual aided and abetted the liable employer's discriminatory acts. *See Cicchetti, supra.* Although it is not entirely clear, that more common theory seems to be the basis for the aiding and abetting claim here. (*See* Complaint Count Three; Opp. at 15–16.)

In order to establish that an individual defendant is liable as an aider and abettor, a plaintiff must ultimately show: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Hurley v. Atl. City Police Dep't*, 174 F.3d at 127 (internal citation and quotation marks omitted).

The Complaint—if only barely—alleges aiding and abetting by defendant Rosenberg. As stated above, Bradley alleges that her employer discriminated against her as to salary and other terms of employment and terminated her in favor of a white, male replacement. These are fairly significant decisions for a modest-sized company, and Rosenberg is the employer company's CEO. The complaint alleges first, that he "presented a strong bias in favor of hiring and promoting Caucasian males into executive and managerial roles"; second, that he has been heard "questioning why Defendants should hire someone in protected classes 'if they are so hard to fire'"; and third, that plaintiff had been told that she was denied a pay increase because she had not yet "prove[n]" herself to Rosenberg. (Compl. ¶¶8, 10, 31).

The first allegation, to be sure, is conclusory and vague. The second, however, suggests that Rosenberg had developed an animus against minority employees, inferably because they are protected by antidiscrimination laws and

hence difficult to fire.[6] The third, taken alone, does not evince discrimination, but taken in context, it does. The plaintiff alleges elsewhere in the Complaint that she was unfairly required to "prove" herself in a manner that was not required of nonminority employees. These facts, taken together with Rosenberg's status as CEO, would support an inference that he played a role in the alleged discriminatory treatment of the plaintiff. I add that evidence of the employer's internal processes and deliberations are within the control of the defendants, and will be the subject of discovery.

I emphasize again that these are allegations, not facts. Crediting these allegations, as I am required to do for purposes of this motion, I will deny the motion to dismiss Count Three.

### d. Punitive Damages

The Complaint includes punitive damages, not as a cause of action, but as one of many items in the prayer for relief. Defendants argue that Bradley has not pled sufficient facts to maintain a claim for punitive damages under the NJLAD. (Motion at 15). Such arguments are premature. Liability of any kind has not yet been established, and the particular forms of relief that might flow from such liability are yet another step more remote. To the extent this is properly the subject of a motion to dismiss at all, the motion is denied.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss the complaint is denied. An appropriate order follows.

Dated: September 12, 2019

**Kevin McNulty**
**United States District Judge**

---

[6] Defendants suggest that this allegation has no force because Aerofarms did in fact hire the plaintiff. That goes to the weight of the evidence, not the sufficiency of the allegation. The sense may be that defendants developed a discriminatory animus post-hiring.

11